KAB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Svetlana Orzhevskaia,
Petitioner,
v.
Kristi Noem, et al.,
Respondents.

No. CV-26-01450-PHX-SMB (JFM)

**ORDER**

Petitioner Svetlana Orzhevskaia brought this action pursuant to U.S.C. § 2241 challenging her prolonged immigration detention and requesting immediate release or an individualized custody hearing. (Doc. 1.) She also moves for a temporary restraining order and preliminary injunction (Doc. 5) and objects to the Magistrate Judge's April 1, 2026 Order. (Doc. 13.)

**I. Background**

Petitioner is a citizen of Russia who presented for inspection at the Calexico, California port of entry on September 26, 2024 after registering through the Department of Homeland Security (DHS) CBP One process. (Doc. 1 at 5, 7; Doc. 1-1 at 4, 28.) Immigration officials determined that she lacked the required entry documents, detained her, and charged her as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 1-1 at 28, 31.) DHS identified Petitioner as an arriving alien and placed her in removal proceedings under 8 U.S.C. § 1229a. (*Id.* at 28.)

Petitioner applied for asylum, withholding of removal, and protection under the

Convention Against Torture, but an immigration judge denied relief and ordered her removed. (Doc. 1 at 7.) On April 27, 2026, the Board of Immigration Appeals (BIA) dismissed her administrative appeal. (Doc. 19 at 3.) Petitioner then sought review and a stay of removal in the United States Court of Appeals for the Ninth Circuit, which opened Case No. 26-2613. (*Id.* at 4.) Her petition for review remains pending.

Petitioner alleges that DHS granted her humanitarian parole but failed to release her. (Doc. 1 at 12.) She principally relies on an October 8, 2024 email from United States Citizenship and Immigration Services (USCIS) stating that the recipient was "recently paroled into the United States" and could apply for employment authorization. (Doc. 1-1 at 6.) The attached email was addressed to Petitioner's adult son and Petitioner alleges that she received an identical email that was lost or misplaced. (Doc. 1 at 12 n.4; Doc. 1-1 at 6.) Respondent disputes that DHS granted Petitioner parole and argue that the email does not establish an individualized parole authorization for her. (Doc. 11 at 6 n.2.)

Petitioner also alleges that confinement has aggravated hypertension, pelvic organ prolapse, orthopedic disease, and other medical conditions. (Doc. 1 at 8-11.) She submitted medical reports predating detention, counsel's description of medical complaints, and counsel's declaration reporting an outpatient hospital visit based on information received through an interpreter and advocate. (Doc. 1-1 at 8-25; Doc. 5-1 at 2-3.) Respondent contends that 8 U.S.C. § 1225(b)(2)(A) requires Petitioner's detention and that her status as an arriving applicant for admission forecloses a constitutional entitlement to additional custody procedures. (Doc. 11 at 2-6.) Respondent also argues that Petitioner's medical allegations concern conditions of confinement rather than the legality of custody. (*Id.* at 6-9.)

## II. Petitioner's Appeal of the Magistrate Judge's Order

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, parties may file objections to a Magistrate Judge order within fourteen days after being served with a copy of the order. The Court must then consider these objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Petitioner argues that Respondent failed to answer the Petition by March 24, 2026, did not request an extension based on excusable neglect, and could not eliminate the consequences of that failure by filing a response on March 31. (Doc. 13 at 2-4.) She contends that 28 U.S.C. § 2243 imposed an absolute response deadline and required the Magistrate Judge to address default before considering the response. (*Id.*)

Rule 1(b) of the Rules Governing Section 2254 Cases permits the Court to apply those rules to other habeas petitions. Rule 4 permits the Court to fix the time for a response, and the Ninth Circuit has recognized that the rule provides greater scheduling flexibility than the response periods stated in 28 U.S.C. § 2243. *Clutchette v. Rushen*, 770 F.2d 1469, 1474-75 (9th Cir. 1985) (upholding an extension beyond the otherwise specified response period).

The Magistrate Judge denied reconsideration as moot after Respondent filed their response. (Doc. 12 at 1-2.) Even if the Court disregarded Respondent' opposition, Petitioner's evidence would not establish the independent parole-based or medical entitlement to immediate release she asserts, and she would be entitled to the same relief on her prolonged-detention claim as discussed below.

Accordingly, the objections are overruled.

## III. Statutory Detention Authority

Petitioner argues that CBP One participation, placement in ordinary removal proceedings, and an alleged parole grant displaced 8 U.S.C. § 1225(b) and made her eligible for bond under 8 U.S.C. § 1226(a). (Doc. 1 at 15-16; Doc. 16 at 2-3.)

Congress expressly provided that an individual covered by § 1225(b)(2)(A) "shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Placement in proceedings under 8 U.S.C. § 1229a therefore does not itself terminate detention authority under 8 U.S.C. § 1225(b)(2)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 297-302 (2018) (explaining detention requirements for applicants for admission). Nor does humanitarian parole constitute admission. 8 U.S.C. § 1182(d)(5)(A). Even assuming DHS granted Petitioner parole, that action would not necessarily establish admission or

ordinary bond eligibility under 8 U.S.C. § 1226(a). *See Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958) (explaining that parole does not change an applicant's status for admission purposes).

Although the Parties do not address *Avilez v. Garland*, its treatment of the transition from administrative proceedings to judicial review further supports rejecting automatic statutory conversion. 69 F.4th 525, 533-35 (9th Cir. 2023) (rejecting automatic conversion from mandatory to discretionary detention based on that transition). *Avilez* concerned 8 U.S.C. § 1226(c), not an arriving applicant detained under 8 U.S.C. § 1225(b), but its reasoning confirms that the commencement of judicial review alone does not necessarily create statutory bond eligibility.

Petitioner expressly argues that the BIA's dismissal and the Ninth Circuit stay have not commenced detention under 8 U.S.C. § 1231. (Doc. 19 at 3-4.) When a court stays removal during judicial review, 8 U.S.C. § 1231(a)(1)(B)(ii) postpones the beginning of the removal period until the reviewing court's final order. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059-62 (9th Cir. 2008) (distinguishing administrative finality from commencement of the removal period). The BIA's dismissal alone does not establish that ordinary post-removal-period detention governs.

For purposes of the constitutional claim, the Court accepts Respondent's position that 8 U.S.C. § 1225(b)(2)(A) supplies detention authority. That conclusion, however, does not establish that the duration and procedures of Petitioner's particular confinement satisfy due process.

## IV. Procedural Due Process

### A. The Entry Fiction

Respondent argues that Petitioner's status as an arriving applicant limits her procedural rights to those prescribed by Congress, relying on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *Angov v. Lynch*, 788 F.3d 893 (9th Cir. 2015). (Doc. 11 at 4-6.) Those authorities recognize the political branches' substantial authority over admission and

the limited admission-related procedural rights of individuals at the threshold of entry. *See Thuraissigiam*, 591 U.S. at 138-40 (addressing additional review of an admission-related determination); *Angov*, 788 F.3d at 898 (discussing procedural protections for an unadmitted applicant).

Although the Parties do not address the Ninth Circuit's subsequent decision in *Padilla v. United States Immigration & Customs Enforcement*, that decision informs the distinction between admission procedures and protection against arbitrary physical confinement. *Padilla v. U.S. Immigr. & Customs Enf't*, ___F.4th ___, 2026 WL 2822044, at 10– 11 (9th Cir. Sept. 21, 2026). In *Padilla*, the Ninth Circuit did not decide the ultimate merits of a constitutional hearing entitlement, and its class excluded individuals encountered at ports of entry. *Id.* But *Padilla* counsels against treating *Thuraissigiam* as categorically resolving every constitutional challenge to detention. *Id.* Petitioner does not ask this Court to admit her or decide her entitlement to immigration protection. (Doc. 1 at 18-19.) She instead challenges the necessity of continued physical confinement without meaningful individualized review while her removal case remains under judicial consideration. (Doc. 19 at 4, 7-9.)

*Mezei* does not compel a different result. There, the Supreme Court upheld the continued restraint of a person permanently excluded on national-security grounds whom no other country would accept. 345 U.S. at 208-16. Here, Respondent identifies no comparable security determination, and Petitioner's removal remains subject to pending judicial review and a stay. (Doc. 11 at 2-6; Doc. 19 at 3-4.)

**B. Required Process**

As in *Rodriguez Diaz v. Garland*, the Court assumes the balancing test in *Mathews v. Eldridge* governs this as-applied procedural challenge. 53 F.4th 1189, 1206 (9th Cir. 2022). Under that test, the Court considers the private interest affected, the risk of erroneous deprivation through the existing procedures and probable value of additional safeguards, and the government's interests, including the burdens additional procedures would impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner's interest is freedom from prolonged physical confinement. *See Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (recognizing the substantial liberty interest implicated by prolonged immigration detention). Petitioner had already spent more than seventeen months in custody when she filed the Petition and more than nineteen months when she supplemented it. (Doc. 1 at 2; Doc. 19 at 2-4.) She alleges that she has never received a meaningful hearing determining whether continued custody is necessary, and Respondent identifies no such hearing. (Doc. 5 at 4; Doc. 11 at 2-6.) Regardless of Petitioner's arguments regarding her parole grant and necessary medical care, prolonged physical restraint itself implicates a weighty private interest. *See Singh*, 638 F.3d at 1203-04. This factor weighs heavily in favor of additional process. Respondent justifies continued custody through Petitioner's statutory classification rather than an individualized determination that she presents a danger or flight risk that reasonable conditions cannot address. (Doc. 11 at 2-6.) Respondent does not identify a neutral custody proceeding at which Petitioner could obtain a decision addressing those questions. (*Id.*) Adjudication of admissibility and immigration protection does not answer whether physical confinement remains necessary during judicial review. A custody hearing would permit a neutral decisionmaker to evaluate current circumstances, consider the government's evidence, and assess alternatives to detention. The BIA's dismissal may strengthen the government's assessment of flight risk, but it does not establish that Petitioner will abscond or that supervision would be inadequate. A meaningful hearing would materially reduce the risk that confinement will continue solely because Petitioner falls within a statutory category, without a sufficient assessment of present necessity. This factor strongly favors additional process.

The government has substantial interests in enforcing immigration law, assuring attendance, maintaining availability for lawful removal, and protecting the community. *See Demore v. Kim*, 538 U.S. 510, 528-31 (2003) (discussing the purposes served by immigration detention). The BIA's dismissal strengthens the government's interest in maintaining Petitioner's availability for removal if the Ninth Circuit denies relief. But the

government's legitimate objectives do not explain why it cannot provide a neutral assessment after this substantial period of confinement. A hearing preserves detention when the government establishes its necessity and permits appropriate supervision when confinement is unnecessary. The Government's administrative burden does not outweigh the private interest and risk of erroneous continued detention established here.

Accordingly, Petitioner's continued prolonged detention without meaningful individualized custody review violates procedural due process. Because Petitioner has shown prolonged confinement without meaningful individualized review, the appropriate remedy is therefore a prompt hearing or release. Petitioner must receive reasonable notice and a meaningful opportunity to review and respond to the government's grounds and evidence, present relevant information, and appear through retained counsel. The adjudicator must consider reasonable alternatives and, if contemplating financial conditions, Petitioner's ability to pay. The government must record the hearing, and the adjudicator must explain the individualized basis for the decision. *See Singh*, 638 F.3d at 1208-09 (explaining the importance of a contemporaneous record for meaningful review).

**C. Burden of Proof**

The remaining question is which party bears the burden at the custody hearing, and under what standard. Applying the same *Mathews* framework, the Court concludes that due process requires Respondent to justify Petitioner's continued confinement by clear and convincing evidence.

*Rodriguez Diaz* does not require a different allocation. There, the Ninth Circuit rejected a claim that due process required an additional bond hearing at which the government bore the burden of proof. But that petitioner was detained under 8 U.S.C. § 1226(a). He had received an individualized custody determination at the outset of his detention, a bond hearing before an immigration judge, and further administrative review. 53 F.4th at 1209-10. The Ninth Circuit also recognized that individualized circumstances may require additional procedures in a particular case. *Id.* at 1213. Petitioner's circumstances differ in each of these respects. Respondents detain her under

§ 1225(b)(2)(A), which provides no bond hearing. She has received no individualized custody determination at any point during a confinement that exceeded nineteen months when she supplemented the Petition. (Doc. 5 at 4; Doc. 11 at 2-6; Doc. 19 at 2-4.) The hearing ordered here exists only because due process requires it after prolonged detention without individualized review. While this Court disagrees with the reasoning in *Rodriguez,* the Court is bound by the decision.

In addressing hearings required by prolonged immigration detention, the Ninth Circuit has held that due process requires the government to prove by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk. *Singh*, 638 F.3d at 1203-04. The *Mathews* factors that require a hearing here also support placing that burden on Respondent.

First, Petitioner's interest in freedom from prolonged physical confinement is substantial. The injury to her from an erroneous decision is continued detention. That injury significantly exceeds the harm to Respondent from an erroneous release subject to reporting and supervision. When the stakes are so unequal, the individual should not be required to share equally in the risk of error. *Singh*, 638 F.3d at 1203-04.

Second, placing the burden on Petitioner would increase the risk of erroneous deprivation. Whether a person presents a danger or a flight risk is a predictive judgment. Requiring a detained individual to disprove both asks her to prove a negative from confinement. Respondent, by contrast, possess the immigration record and the information on which any assessment of danger or flight risk would rest.

Third, this allocation does not impair Respondent's legitimate interests. Respondent may rely on the BIA's dismissal, Petitioner's immigration history, and any other relevant evidence, and the adjudicator may give that evidence appropriate weight. If Respondent makes the required showing, detention may continue. The standard requires only that Respondent make that showing before Petitioner's confinement is extended further.

Accordingly, at the custody hearing ordered below, Respondent must bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the

community or a flight risk. Even if Respondent carries that burden, the adjudicator must consider whether reasonable alternatives to detention would adequately address the identified risk, consistent with the procedures described above.

**V. Remaining Claims**

The Court need not resolve the disputed parole grant to remedy the independent procedural violation and dismisses Petitioner's parole-based claims, including her related Administrative Procedure Act and equitable-estoppel theories, without prejudice. Petitioner has not established that her medical conditions require release rather than adequate treatment or changes in confinement, so the Court also dismisses her independent medical claims without prejudice. (Doc. 1-1 at 8-25; Doc. 5-1 at 2-3.)

**IT IS ORDERED**:

(1) The Petition for Writ of Habeas Corpus (Doc. 1) is **granted in part** as to Petitioner's as-applied procedural due process challenge to prolonged detention without meaningful individualized custody review.

(2) Within ten calendar days after entry of this Order, Respondent must provide Petitioner an individualized custody hearing before a neutral adjudicator with authority to order release.

(3) If Respondent do not provide a hearing satisfying this Order within ten calendar days after entry, Respondent must release Petitioner by the expiration of that period, subject to reasonable reporting and supervision requirements.

(4) The Court dismisses Petitioner's independent parole-based claims, related Administrative Procedure Act and equitable-estoppel claims, and independent medical claims without prejudice as explained in this Order.

(5) Petitioner's objections to the Magistrate Judge's April 1, 2026 Order are **overruled** and the Appeal (Doc. 13) is **dismissed**.

/ / /

/ /

/

(6) Any remaining pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 24th day of November, 2026.

Honorable Susan M. Brnovich
United States District Judge